# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | | |
|---|---|---|
| PARTHENON UNIFIED MEMORY ARCHITECTURE LLC, | § § § | |
| Plaintiff, | § § | Case No. 2:14-cv-00690-RSP<br>Lead Case |
| v. | § § | Case No. 2:14-cv-00691-JRG-RSP |
| LG ELECTRONICS, INC and LG ELECTRONICS U.S.A., INC., | § § § | Member Case |
| Defendants. | § § | |

## MEMORANDUM ORDER

Before the Court is Defendants LG Electronics, Inc. and LG Electronics U.S.A., Inc.'s (collectively "LGE") Motion to Sever and Transfer Venue to the Southern District of California (Dkt. No. 54). LGE argues (a) that this case should be transferred to the Southern District of California; and (b) that the Court should sever LGE from any other defendant.

Plaintiff Parthenon Unified Memory Architecture LLC ("Parthenon") opposes transfer. Parthenon does not address LGE's motion to sever. The Court, after considering the evidence and weighing the factors, finds that LGE has not shown that this case should be transferred. The Court finds that LGE's request to sever is moot because LGE is not joined with any other defendant.

## LGE'S MOTION TO TRANSFER VENUE

### APPLICABLE LAW

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a) (2006). The first step in a Court's

transfer analysis is deciding "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*In re Volkswagen I*").

If that threshold is met, the Court then analyzes public and private factors relating to the convenience of parties and witnesses and the interests of particular venues in hearing the case. *See Humble Oil & Ref. Co. v. Bell Marine Serv., Inc.*, 321 F.2d 53, 56 (5th Cir. 1963); *In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009); *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2009). The private factors are: 1) the relative ease of access to sources of proof; 2) the availability of compulsory process to secure the attendance of witnesses; 3) the cost of attendance for willing witnesses; and 4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *In re Volkswagen I*, 371 F.3d at 203; *In re Nintendo*, 589 F.3d at 1198; *In re TS Tech*, 551 F.3d at 1319. The public factors are: 1) the administrative difficulties flowing from court congestion; 2) the local interest in having localized interests decided at home; 3) the familiarity of the forum with the law that will govern the case; and 4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *In re Volkswagen I*, 371 F.3d at 203; *In re Nintendo*, 589 F.3d at 1198; *In re TS Tech*, 551 F.3d at 1319.

The plaintiff's choice of venue is not a factor in this analysis. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 314-15 (5th Cir. 2008) ("*In re Volkswagen II*"). Rather, the plaintiff's choice of venue contributes to the defendant's burden of proving that the transferee venue is "clearly more convenient" than the transferor venue. *In re Volkswagen II*, 545 F.3d at 315; *In re Nintendo*, 589 F.3d at 1200; *In re TS Tech*, 551 F.3d at 1319. Although the private and public

factors apply to most transfer cases, "they are not necessarily exhaustive or exclusive," and no single factor is dispositive. *In re Volkswagen II*, 545 F.3d at 314-15.

Timely motions to transfer venue should be "should [be given] a top priority in the handling of [a case]," and "are to be decided based on 'the situation which existed when suit was instituted.'" *In re Horseshoe Entm't*, 337 F.3d 429, 433 (5th Cir. 2003); *In re EMC Corp.*, Dkt. No. 2013-M142, 2013 WL 324154 (Fed. Cir. Jan. 29, 2013) (quoting *Hoffman v. Blaski*, 363 U.S. 335, 443 (1960)).

## ANALYSIS

The Parties agree that third-party Qualcomm Technologies, Inc. ("Qualcomm") has documents and witnesses that are relevant to this case. Parthenon has accused some LGE products of infringing the asserted patents when they use a Qualcomm Snapdragon processor (the "Snapdragon Chip"). Parthenon claims that two other third-parties: STMicroelectronics, Inc. ("STMicro") and MediaTek, Inc. ("MediaTek") also have documents and witnesses that are relevant to this case. STMicro originally owned the asserted patents and it allegedly has evidence that relates to LGE's defenses. MediaTek manufactures chips for LGE products and it allegedly has evidence that relates to Parthenon's claims of infringement.

**A. Proper Venue**

The Parties do not dispute that the Eastern District of Texas and the Southern District of California are proper venues.

**B. Private Interest Factors**

    **1. Relative Ease of Access to Sources of Proof**

"In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in

favor of transfer to that location." *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) (citation omitted).

LGE claims that Qualcomm's documents are in San Diego, California "where Qualcomm's research and development headquarters reside." Dkt. No. 54 at 5-6, 9. LGE also claims that it has "documents and records that exist in San Diego" because it has a Joint Lab Team there that works closely with Qualcomm. Dkt. No. 54-2 ¶ 12. LGE finally claims that STMicro has no evidence in Texas because STMicro "is headquartered in Geneva, Switzerland, not Coppell, Texas." Dkt. No. 88 at 5.

Parthenon claims that Qualcomm's evidence is likely in Raleigh, North Carolina or Austin, Texas, Dkt. No. 82 at 3-4, MediaTek's evidence is likely in Austin, and STMicro's evidence is likely in Coppell,[1] Dkt. No. 82 at 6. Parthenon claims that its parent corporation has been in the Eastern District of Texas for over four years, and that Parthenon itself has "sources of proof [that] are located in this District." Dkt. No. 94 at 5; Dkt. No. 82 at 9; Dkt. No. 82-26 at 1; Dkt. No. 82-27 ¶¶ 2-3.

LGE has not shown that Qualcomm's evidence is more accessible from San Diego. It has shown only that Qualcomm's documents are in both Raleigh and San Diego. *See* Dkt. No. 54-4 ¶ 5 ("Qualcomm's technical documents and source code management systems for the accused Qualcomm Snapdragon chip products are primarily based in San Diego, California and Raleigh, North Carolina.").

Parthenon claims that Qualcomm's documents are likely in Raleigh because, according to Qualcomm, Raleigh is where the engineers "responsible for creating Qualcomm's next-

---

[1] Coppell, Texas is partly in Denton County and the Eastern District of Texas.

generation, world-class Snapdragon processors" are based. Dkt. No. 82 at 3; Dkt No. 82-3 at 1. LGE's evidence does not refute this claim.

As to other third-parties, Parthenon has shown that MediaTek and STMicro have evidence that is more accessible from Marshall than San Diego. MediaTek has a design facility in Austin, and Parthenon has shown that LGE products use MediaTek chips. *See* Dkt. No. 94 at 3-4 (identifying two accused LGE products with MediaTek chips). STMicro is located in Coppell, Texas, Dkt. No. 82-19 at 1, and all the asserted patents name a STMicro entity in "Carrollton, Texas" or "Coppell, Texas" as the asserted patents' original assignee. *See* U.S. Patent No. 5,812,789, at [73]; U.S. Patent No. 8,054,315, at [73]; *see also* U.S. Patent No. 6,427,194, at [73] (listing both Texas and Italian STMicro entities). STMicro holds evidence that is especially relevant to this case because LGE has asserted defenses of prosecution history estoppel, license, exhaustion, and standing. Dkt. No. 82 at 11.

Parthenon finally has shown that its own evidence is in this District. Parthenon's parent corporation, Acacia Research Group LLC ("Acacia Research"), has had offices here since at least 2011. Dkt. No. 82-26 at 1; Dkt. No. 82-27 ¶¶ 2-3. Although LGE asserts that Parthenon and Acacia Research are both subsidiaries of a California entity, that does not rebut Parthenon's showing that its evidence is in this District.

LGE has shown that it has documents and records in San Diego, but has not clearly stated what those documents contain. LGE claims that this case relates to the "design of memory interfaces," Dkt. No. 54-2 ¶ 14, but only generally states that its Joint Lab Team "interact[s] with Qualcomm employees and work[s] on issues relating to the Qualcomm processors found in LG-branded mobile products," Dkt. No. 54-2 ¶ 11. *See also* Dkt. No. 54-2 ¶ 10 ("Qualcomm designs

- 5 -

and supplies *various* hardware components, such as Snapdragon processors, that are found in LG-branded mobile devices.") (emphasis added).

This factor is, on a whole, neutral in this case. Parthenon has shown that it, MediaTek, and STMicro have evidence that is more accessible from the Eastern District of Texas than from the Southern District of California. LGE has not shown that Qualcomm's documents are more accessible from the Southern District of California because it does not distinguish between San Diego and Raleigh on this factor, and has not provided persuasive evidence on the relevance of its Joint Lab Team to this case.

### 2. Cost of Attendance for Willing Witnesses

LGE contends that this factor "strongly favors transfer" because "travel by Qualcomm engineers to Marshall, Texas would require at least a six hour plane ride and several days off from their jobs."[2] Dkt. No. 54 at 6. In addition, LGE claims, for the named inventors and LGE witnesses, convenience and cost-of-travel favor transfer to San Diego. Dkt. No. 54 at 6-7.

Parthenon claims that Qualcomm's witnesses, like its documents, are likely in Raleigh or Austin. Dkt. No. 94 at 2-3. Parthenon also claims that STMicro's, MediaTek's, and its own witnesses are in Texas. Dkt. No. 94 at 3-4; Dkt. No. 82 at 13. Parthenon finally claims that, to attend trial, several LGE witnesses will need to travel from Washington or New Jersey. Dkt. No. 82 at 13; Dkt. No. 54 at 7 n.4.

---

[2] The Court assesses the Qualcomm witnesses under this factor even though it is unclear whether Qualcomm will provide willing witnesses. Mr. Reiner Klement stated for Qualcomm that "none of us could commit to appearing voluntarily in Marshall, Texas, as witnesses in these proceedings unless required by compulsory legal process." Dkt. No. 54-4 ¶ 7. But LGE argues that the cost of requiring Qualcomm's witnesses to attend trial in Texas weighs in favor of transfer. *See, e.g.*, Dkt. No. 54 at 5-6 (arguing that travel by Qualcomm engineers to Marshall would be burdensome under the heading "Convenience of Third-Party Witnesses Weighs Heavily in Favor of Transfer").

"The convenience of the witnesses is probably the single most important factor in a transfer analysis." *In re Genentech, Inc.*, 566 F.3d 1338, 1342 (Fed. Cir. 2009). While the Court must consider the convenience of both the party and non-party witnesses, it is the convenience of non-party witnesses that is the more important factor and is accorded greater weight in a transfer of venue analysis. *Aquatic Amusement Assoc., Ltd. v. Walt Disney World Co.*, 734 F. Supp. 54, 57 (N.D.N.Y. 1990); *see also* 15 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3851 (3d ed. 2012).

"A district court should assess the relevance and materiality of the information the witness may provide." *In re Genentech, Inc.*, 566 at 1343. However, there is no requirement that the movant identify "key witnesses," or show "that the potential witness has more than relevant and material information . . . ." *Id.* at 1343-44.

LGE has not shown that San Diego is more convenient for Qualcomm's witnesses. LGE claims that this case relates to the "design of memory interfaces," Dkt. No. 54-2 ¶ 14, and that it "will have to rely on Qualcomm's knowledge of the Snapdragon processors. . .to address Parthenon's allegations," Dkt. No. 54 at 6. These technical witnesses are in San Diego, LGE claims, because "[m]ost of the likely Qualcomm witnesses. . .with relevant knowledge concerning the design, development, marketing, and sales of the accused Qualcomm Snapdragon chip products are based in San Diego." Dkt. No. 88 at 2; Dkt. No 54-4 ¶ 6.

LGE's evidence on this point is equivocal. It shows that some witnesses with knowledge on any of the "design, development, marketing, and sales" of the Snapdragon Chip are in San Diego, and that some witnesses with general knowledge about the "design" or "development" of the Snapdragon Chip are also in San Diego. Those statements together do not show that witnesses with specific knowledge about "memory interfaces" in the Snapdragon Chip are in San

Diego and not, for example, in Raleigh or elsewhere. *See* Dkt. No. 82-3 at 1-2 ("The Qualcomm Design Center in Raleigh, NC is responsible for creating Qualcomm's next-generation, world-class, Snapdragon processors.").

Similarly, Mr. Reiner Klement,[3] a Qualcomm executive, states that Qualcomm's "US-based engineering teams who design or develop the ARM-based processors used in the Snapdragon chip products are either located in California or Raleigh, North Carolina." Dkt. No. 54-4 ¶ 6. He also states that "[t]he product management and administrative teams are [] largely based in San Diego." Dkt. No. 54-4 ¶ 5.

These statements show that Qualcomm's engineering teams are based on opposite ends of the country, and that Qualcomm's managers and administrators are based primarily in San Diego. Indeed, Mr. Klement's statement that Qualcomm's "ARM-based processor teams" are either in California or Raleigh suggests that it is equally likely for a relevant technical witness to be in California or North Carolina.

For the remaining third-party witnesses, LGE has shown that it would be more convenient for more named inventors to attend trial in San Diego but Parthenon has shown that it would be more convenient for MediaTek's and STMicro's witnesses to attend trial in Marshall.[4] *See* Dkt. No. 82-16 (listing MediaTek witnesses in Texas who likely have knowledge on chip design).[5] The only dispute here is the location of STMicro's witnesses. As the Court stated

---

[3] Mr. Klement is a Vice President, Product Management, at Qualcomm. Mr. Klement is responsible for managing Qualcomm's portfolio of Snapdragon chip products. Dkt. No. 54-4 ¶ 1.

[4] LGE has evidence that two inventors live in California. Dkt. No. 54-5; Dkt. No. 54-6. Parthenon has evidence that one inventor will appear in Marshall for trial. Dkt. No. 82-29.

[5] LGE disputes the relevance of MediaTek chips because Parthenon's Patent Rule 3-1 disclosures focus on Qualcomm chips. However, as Parthenon stated in its sur-reply brief, Parthenon accused two LGE devices with MediaTek chips of infringement. Dkt. No. 94 at 3-4.

earlier, the asserted patents were assigned to a STMicro entity in Texas. The evidence shows that the relevant witnesses are likely at STMicro's headquarters in Coppell, Texas.

To the extent that transfer to the Southern District of California would be convenient for a Party witness, the Court finds that transfer only shifts the convenience from Parthenon to LGE. Parthenon has shown that Marshall is more convenient for Mr. Marvin Key, Parthenon's CEO, because he lives in Texas and works in this District. Dkt. No. 82-27 ¶¶ 2-3. LGE has shown that it has an office with numerous employees in San Diego, Dkt. No. 54 at 7, but also has stated that it has at least two witnesses in Washington and New Jersey, Dkt. No. 82-24 at 48-50. If any of LGE's witnesses in San Diego are relevant to this case, transferring it to the Southern District of California would only shift the burden of travel from LGE's witnesses to Mr. Keys.[6]

This factor weighs against transfer. Although LGE has shown that the Southern District of California is more convenient for some of the named inventors and LGE witnesses, Parthenon has shown that the Eastern District of Texas is more convenient for MediaTek's, STMicro's, and Parthenon's witnesses.

### 3. Availability of Compulsory Process to Secure the Attendance of Witnesses

Rule 45 provides that this Court may command a person who "resides, is employed, or regularly transacts business in person" in Texas to attend trial in Marshall if that person "would not incur substantial expense." Fed. R. Civ. P. 45(c)(1)(B). This Court also may command a person to attend a deposition "with 100 miles of where the person resides, is employed, or regularly transacts business in person." Fed. R. Civ. P. 45 (a)(2); *see id.* (c)(1)(A), (d)(3)(a).

---

[6] LGE has provided a declaration from Mr. Michael Henson a Senior Director of Quality Management for LGE who is based in San Diego. LGE has not shown that Mr. Henson will be a witness in this case.

Party witnesses do not require compulsory process, and the Court's analysis of this factor focuses on third-party witnesses for whom compulsory process to attend trial might be necessary.

The Eastern District of Texas has subpoena power over the MediaTek witnesses and the STMicro witnesses. The Southern District of California has absolute subpoena power over one inventor and any possible Qualcomm witnesses in San Diego. The Southern District of California also has subpoena power over two inventors in Northern California. Neither District has subpoena power over any Qualcomm witnesses in Raleigh. This factor is neutral as to transfer.

### 4. All Other Practical Problems that Make Trial of a Case Easy, Expeditious, and Inexpensive

The Court finds that judicial economy weighs against transfer because there are at least two other cases that will remain here involving the same patents where no venue issue exists. *See, e.g.*, *In re EMC Corp.*, 501 F. App'x 973, 976 (Fed. Cir. 2013) ("The district court could properly consider the benefits to judicial economy arising from having the same judge handle both Oasis' suits against the petitioners and Oasis' suits against other parties involving the same patents and technology as to which there was no issue of transfer.").

## C. Public Interest Factors

### 1. Administrative Difficulties Flowing From Court Congestion

The Court finds this factor weighs slightly against transfer. While time-to-trial in this District and the Southern District of California are nearly the same, LGE filed this motion over four months after it received summons and only after the Parties had exchanged infringement and invalidity contentions.

### 2. Local Interest in Having Localized Interests Decided at Home

The Court finds this factor is neutral as to transfer. At least one named inventor works for a Texas company in California. Dkt. No. 54-6 at 1. Qualcomm designs chips in both Austin and San Diego. MediaTek and Parthenon both operate in Texas. LGE has a team that is located in California. Neither party can dispute that both Texas and California have an interest in this case.

### 3. Familiarity of the Forum With the Law that Will Govern the Case and Avoidance of Unnecessary Problems of Conflict of Laws or in the Application of Foreign Law

The Parties do not dispute that these two factors are neutral as to transfer. Dkt. No. 54 at 13; Dkt. No. 82 at 15.

## LGE'S MOTION TO SEVER

Rule 42 provides that "[i]f actions before the court involve a common question of law or fact, the court may. . . consolidate the actions" to avoid unnecessary cost or delay. Fed. R. Civ. P. 42(a)(2). On August 5, 2015, the Court consolidated, for "pretrial purposes only," two cases involving Defendants LGE, HTC Corporation, and HTC America, Inc. Dkt. No. 13. The Court did not join the Defendants under Rule 20. Fed. R. Civ. P. 20(a)(2). LGE's motion to sever pursuant to Rule 21 is therefore moot.

## CONCLUSION

A motion to transfer venue should only be granted if the moving party can show that the transferee venue is "clearly more convenient" than the transferor venue. *In re Nintendo Co.*, 589 F.3d at 1197; *In re Genentech, Inc.*, 566 F.3d at 1342 (Fed. Cir. 2009). After weighing the evidence as a whole, the Court finds that this case should remain in the Eastern District of Texas because LGE has not shown that the Southern District of California would be "clearly more

convenient" for either the Parties or third-parties.  LGE's Motion to Transfer (Dkt. No. 54) is therefore **DENIED**, and LGE's Motion to Sever (Dkt. No. 54) is **DENIED AS MOOT**.

**SIGNED this 5th day of August, 2015.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE